J. L. Baker (of Color) *vs.* Winfrey.
Isabel Baker (of Color) *vs.* Same.
D. Baker (of Color) *vs.* Bledsoe.
A. J. Baker (of Color) *vs.* Same.
Daniel Baker (of Color) *vs.* Winfrey.

APPEALS FROM CUMBERLAND COUNTY COURT.

APPRENTICES.

Case 53.

1.   The 3d section of the 64th chapter of the Revised Statutes recognizes the right of the mother to bind out her children, under the

supervision of the County Court. This embraces free mothers of color, as well as white women, where there is no legitimate father.

2. The County Court, binding out orphans of a free woman of color, should permit the mother of such orphan to nominate the person to whom the orphan is to be bound, and bind to such person, unless there be valid reasons against it.

3. There should exist some ground of necessity for binding out orphan children of color, such as inability or neglect to bring them up in comfort and moral habits. The mother is entitled to the services of her children, and should not be deprived of their labor and assistance without good reason.

4. The indenture of apprenticeship should contain a covenant on the part of the master to teach the apprentice the art or business designated by the order of the County Court.

The facts of the case are stated in the opinion of the court.—*Rep.*

*B. & J. Monroe,* for appellants—

1. This whole proceeding was illegal.. There does not appear in any part of the proceeding any necessity or propriety in the action of the County Court. It does not appear that the mothers of these orphan children of color were not raising them in honest courses; that they did not control them and so govern them as to secure society against any evil from their keeping them under their own control; nor is it shown that their mothers did not stand in need of their assistance and services to aid in rearing those of her family who were incapable of supporting themselves.

2. The Revised Statutes, chapter 64, section 3, under which the proceedings in these cases was conducted was not respected. The third section, *supra,* recognizes the right of guardians or mothers to bind out their wards or children under the supervision of the County Court; and it is difficult to perceive, if the mother possesses such right, why her wish should not be respected when she is summoned to show cause why her children shall not be bound apprentices. This privilege, small as it is, was denied to these colored women without even the suggestion of a reason for it. In this the County Court acted ille-

gally, not to say with cruelty. The opposition of
the mothers to the binding out of their children at
all was disregarded, as well as to the binding to the
particular persons designated by the County Court,
and the same injustice was repeated on the release
of one master and the substitution of another.

3. The court should, in justice to the apprentices,
have required a covenant in the indenture on the
part of the master to teach the apprentice the art,
trade, or mystery designated in the order of the Coun-
ty Court, which was not done.

For these, as well as other errors of the County
Court, a reversal is prayed for.

*J. Harlan,* for appellees—

1. As to the two cases against F. H. Winfrey. An
order was made by the County Court at its January
term, 1854, reciting that John Lewis Baker, an in-
fant son of Eliza Baker, a free woman of color, was
bound as an apprentice to Thomas M. Emerson, un-
til said boy was twenty-one years old. And on mo-
tion of Emerson, and for good cause to the court
shown, he was released from the indentures of ap-
prenticeship, and proof being made that "said Em-
erson was in possession of said boy, and gave his
consent in open court to said binding, on the motion
of the county attorney, said John Lewis Baker was
ordered to be bound to Francis H. Winfrey until he,
(said boy,) was twenty-one years old, he being seven
years old, to learn the art of farming;" and there-
upon Winfrey executed indentures of apprenticeship,
containing the stipulations required by law. (*Revis-
ed Statutes, page* 466.) The indentures contains all
of the stipulations required, except education, which
is prohibited to free negroes, and the apprentice be-
longing to that class of cases, no objection can be
made on that ground. (See *Record, pages* 28, 29.)

The other case of Francis H. Winfrey is substan-
tially the same, except the apprentice is a girl about

BAKERS<br>
vs.<br>
WINFREY, &c.

BEN. MONROE'S REPORTS,

thirteen years old, who was bound until she was eighteen years old. (*Record, page* 31, *&c.*)

2. The cases of T. C. Winfrey. At the October term of the County Court, 1853, Daniel Baker was bound apprentice to T. C. Winfrey, the mother of said boy having been previously summoned to show cause against it. The indentures in this case contain substantially the same stipulations as in the case of Francis H. Winfrey, and are in conformity to the Revised Statutes. The other case of Winfrey is substantially the same.

3. The cases of John H. Bledsoe are substantially the same as in the two preceding cases of Francis H., and T. C. Winfrey.

I contend, 1. That where the action of the County Court was had at October term, 1853, due notice had been given to the mother of the children, and that on the change made at January term, 1854, there was no necessity of giving notice to the mother of the infant, because it was in the possession and under the control of the person to whom it had been bound at the previous October term; and 2. That the proceedings of the County Court were substantially in conformity to law, and therefore no valid ground exists for reversing the orders.

February 6.

Chief Justice MARSHALL delivered the opinion of the Court—

These five cases are brought by appeals from the proceedings of the County Court in binding out the appellants, free persons of color, of whom some are the children of Eliza Baker and others the children of Mary Baker, free women of color. It appears that a summons issued against each of the mothers to appear at the October term of the County Court, and show cause why her children should not be bound out, &c. That on their appearance, the county attorney moved the court to bind out the children, ten in number, to five persons whom he named; to which the mothers, by their counsel, objected, claiming the

right to choose the masters to whom their children should be bound, and naming four persons whom they selected under that right. But the court, upon hearing argument, and without any evidence or, (so far as appears,) any suggestion that the persons proposed by the mothers were not competent and suitable, overruled the objection, and thus denied the right claimed; and without any evidence of the condition or character of the mothers, or of their ability or inability to support the children, or their disposition to bring them up in moral courses, proceeded to bind out to the persons named by the county attorney each of the ten children, the males to learn farming, and the females to learn house-keeping. It appears from the orders and the indentures that several of the children were between ten and fourteen years of age, one three years old, another five, and the others between five and ten. It is somewhat singular that in two or three months after these proceedings most of the persons to whom the children were bound came again into court, and on their several motions, and as the order says, for good cause shown, they were severally released from the indentures, and the children were immediately bound again to other persons. In most of these instances the mothers, by their attorney, again objected.

Each of the ten children prosecutes an appeal for the reversal of these proceedings, all of which appear in the same record, and are in fact precisely similar, except that as to some of them, there was no change of masters. Five of the cases seem not to have been prepared for hearing by service of the summons on the appellees, the appeal having been taken out of court and after the term, and five alone, named at the head of this opinion, have been submitted for our decision.

The radical question presented by the record, is whether the mothers have a right to select the masters to whom their children are to be bound.

1. The 3d section of the 64th chapter of the Revised Statutes recognizes the right of the mother to bind out her children, under the supervision of the County Court.— This embraces free mothers of color, as well as white women, where there is no legitimate father.

The 3d section of the 64th chapter of the Revised Statute, title master and apprentice, page 466, enacts that any orphan minor may be bound, &c., by his guardian, or if no guardian, by his mother, with the consent entered of record, of the County Court of the county where the minor resides. We think this section recognizes and secures a right in the mother to bind out her child or children under the supervision of the County Court, provided merely to prevent the choice of an incompetent or unsuitable person to whom her children are to be bound. And although it may be inferred that the framers of this section had in contemplation white mothers and their children, the language is broad enough to embrace also free colored persons, and all cases in which there is no father by whom the right to dispose of the services of the children by hiring or by placing them under apprenticeship, may be exercised.

Such may be assumed to have been the fact in the cases now before us, in which, although there is no evidence that these children are orphans, there is no suggestion that their father or fathers are ascertainable in the manner required by the law, or that if living they have or can assert the legal rights belonging to that relation, when its existence is recognized and sanctioned by the law. The fact that the mothers were summoned as the persons having the children in possession, precludes the supposition that they had husbands entitled to legal rights in that character. And if it be necessary, in order to secure to them the legal as well as the natural rights of mothers, that they should have had lawful husbands, by whose death their children have become orphans, these facts may be and should be presumed in favor of their natural right to the control and the services of their children, when in fact there is no father who can claim or exercise the legal right. But we do not suppose the statute intended to exclude from the right recognized in the 3d section, the mother of an illegitimate child, who, although by the common law he was regarded

as *filius nullius*, is by our law regarded at least as the child of his mother, and therefore occupies, with respect to his mother, substantially the same position as if he were an orphan by the death of his father. The natural right of such a mother to the society and services of her child, grows out of the fact that he is her own child, the produce of her ow body, nurtured from her own bosom, and protected and provided for in tender infancy by her care and affection. Our law does not repudiate or ignore the rights even of such a mother. It does not deprive her of the society, and services, and control of her child, unless in view of the welfare of the child itself, or of the welfare and safety of society, it be necessary to do so. And even when, from her poverty or incapacity, this necessity exists, it does not intend to deprive her of the poor privilege of choosing a proper master to whom her child shall render service.

We are of opinion, therefore, that if this were a proper case for binding out these children, these mothers respectively had, by the 3d section of the statute referred to, the right, under the supervision of the County Court, and subject to its judgment as to the suitableness of the choice, to choose or select the persons to whom their children should be bound, and that the Court, unless those persons were incompetent or unsuitable, was bound to consent of record that the children be bound to such persons; and might, of course, have had the indentures executed in a formal manner, and for such period, not extending beyond the full age of the child, as might be agreed on between the mother and the proposed master. The County Court therefore erred in overruling the objection of the mother to the persons proposed by the county attorney as the masters to whom the children were to be bound, and in disallowing their right to choose the masters, and in proceeding to bind out the children severally to the different persons objected to by the mothers.

2. The County Court, binding out orphans of a free woman of color, should permit the mother of such orphan to nominate the person to whom the orphan is to be bound, and bind to such person, unless there be valid reasons against it.

As these proceedings were erroneous and illegal, and therefore presumably injurious to the children

3. There should exist some ground of

necessity for binding out orphan children of color, such as inability or neglect to bring them up in comfort and moral habits. The mother is entitled to the services of her children, and should not be deprived of their labor and assistance without good reason.

who had a right to the care and protection of their mothers, we think they are severally entitled to rely upon the illegality referred to as a ground of reversing the orders operating upon them respectively. And as the illegality of the first orders and indentures rendered illegal the possession of the children by their supposed masters, so far as any possession was taken under said orders, the subsequent appearance of the master in court, when he was released and his supposed apprentice was, with his consent, bound to another, neither dispensed, nor was a compliance with the notice required by the statute, to be served upon the person in possession of the children intended to be bound out. There is therefore no necessity for discriminating between the cases in which the master was changed and new indentures taken, and those in which the original order and indentures remain unchanged. The proceedings in both cases were illegal and erroneous; and the illegality is not cured or waived by the fact that the mothers objected to the second binding, any more than by their objections to the first.

As, for the reasons above stated, the orders and indentures in the five cases now before us must be reversed and annulled, it is not necessary to notice in detail all the errors which have been relied on. But we remark that as the number of children to be bound out to particular persons, and the periods for which they are to serve, are circumstances well calculated to excite a desire, as matter of profit, to have the rights secured to a master of an apprentice, the same circumstances should also excite the vigilance and precaution of the court in exercising the power entrusted to it, lest under the specious form of charity or of a public duty, mothers whose condition requires the services of their children who are capable of labor, should be deprived of them without necessity, and lest children who, from their tender age, require the care and nurture of their mothers, and are the objects of their affection and solicitude, should be

taken from them, when it is not necessary that this should be done as a means of providing for their sustenance. The mere fact that these are colored persons does not put them out of the protection of the law, nor subject them to be dealt with or disposed of with a view merely to the interest of individuals. There must be some ground of necessity, in view of the requirements of the law, to authorize the binding out of these children. As to such as are able to do service and to earn hires, their mothers are primarily entitled to the benefits, and there is no propriety in taking them from her against her consent, unless she is bringing them up in idle and immoral habits, or fails to keep them in reasonable comfort. She is not necessarily poor if she has able-bodied sons whose services she can command. And as to the children who are incapable of service, and require a mother's care, they should not be taken against her consent, unless their comfortable subsistence require it. No such necessity is shown to have existed with respect to either class of children. We only say further, that although the statutes do not in terms require it, the indentures ought, in all propriety, to contain a covenant on the part of the master to teach his apprentice the art or business for the purpose of learning which he is bound to him.

For the errors before noticed, the several orders for binding out the appellants are reversed and the proceedings under them annulled, and the cases are remanded for proceedings *de novo*, in conformity with this opinion, if it be deemed necessary to institute such proceedings.

4. The indenture of apprenticeship should contain a covenant on the part of the master to teach the apprentice the art or business designated by the order of the County Court.