David PHILLIPS, Appellant,

v.

Ruth HORLANDER, Appellee.

Court of Appeals of Kentucky.

Oct. 3, 1975.

James H. Waitman, Owensboro, for appellant.

Mark R. Hutchinson, Owensboro, for appellee.

JONES, Justice.

On November 18, 1973, a son was born to David Phillips and Ruth Horlander. David and Ruth are not now, nor have they ever been married. David has supported his child to the extent of paying the expenses of his birth ($700.00). Further attempts to support the child have been rejected by Ruth, and all attempts at visitation have been refused by her.

David filed an action in the Daviess Circuit Court alleging that he was the father of John Richard Horlander, an illegitimate child, born to Ruth. He alleged also that he had been denied visitation with the child. David sought to be adjudged the father of John Richard Horlander; that he be ordered to pay a reasonable amount to the support of the child and that Ruth be ordered to allow him reasonable visitation privileges with the child.

In her response, Ruth, while not admitting the paternity of John Richard, asserted that under the laws of this Commonwealth, a putative father of an illegitimate child has no right of visitation with that child.

The trial court agreed with Ruth's contentions. He sustained her motion for judgment on the pleadings. He held that as a matter of law a putative father of an illegitimate child has no legal right to visit with and support the child against the wishes of the natural mother.

From this judgment, Richard filed this appeal.

The sole question presented is whether or not the father of an illegitimate child is entitled to have visitation privileges with the child.

The trial court in his opinion noted:

"At common law the only obligation of a putative father was maintenance. He had no other obligation toward the child and had no rights whatsoever of custody, visitation or support. In all other respects the child, vis a vis the putative father, was a non person. Chapter 406 of the Kentucky Revised Statutes simply codifies the common law by imposing the duty of maintenance, but is silent on the question of rights of the putative father. Courts in other jurisdictions are split on the question."

Thus, an illegitimate child is often exposed to a hostile environment. This may cause the child to develop symptoms of rejection and inferiority. Every supportive measure must be employed to protect such a child.

This court recognizes that in any case involving visitation, neither the fact of illegitimacy nor the personal preference or prejudices of the parents should control the court's decision. The governing criterion

and the thread that runs so true must always be the welfare and best interests of the child.

In many instances the putative father may instill in the child a sense of stability. He may develop qualities in the child which the mother is uninterested, unwilling or incapable of developing. To the extent that a father can perform such a valuable service his presence becomes exceedingly important.

Other jurisdictions have addressed the matter of the rights of the putative father toward his child born out of wedlock.

In 1967 the District Court of Appeals of Florida stated:

"The courts having occasion to pass upon this question appear to have uniformly held that where a putative father acknowledges his relationship to an illegitimate child, manifests a genuine interest in the child's welfare and provides it with support, such father should be granted the right to visit the child at reasonable times unless such visits are shown to be detrimental to the child's welfare." *Mixon v. Mize*, 198 So.2d 373 (Fla.App.1967).

The Superior Court of Pennsylvania sustained the proposition that a putative father may be granted the right of visitation with his illegitimate child when the child is in the mother's custody. *Commonwealth v. Rozanski*, 206 Pa.Super. 397, 213 A.2d 155 (1965).

Illinois has a statute which defines a parent as:

"The father and mother of a legitimate child, or the survivor of them, or the natural mother of an illegitimate child, and includes any adoptive parent."

The terms of the statute treated unwed fathers as nonpersons. Peter Stanley lived with Joan Stanley for eighteen years and had three children by her. Joan and Peter were never married. When Joan died dependency proceedings were instituted by the state of Illinois. The three children were declared wards of the state pursuant to a statute which provided that children of unwed fathers became wards of the state upon the death of the mother.

Peter Stanley appealed, claiming that he had never been shown as an unfit parent.

■ The Illinois Supreme Court affirmed the district court. The Supreme Court of the United States reversed holding as follows:

"We have concluded that all Illinois parents are constitutionally entitled to a hearing on their fitness before their children are removed from their custody. It follows that denying such a hearing to Stanley and those like him while granting it to other Illinois parents is inescapably contrary to the Equal Protection Clause." *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972).

This court is of the opinion that now is the time to rend the veil of puritan precepts through which unwed fathers are viewed as nonpersons. To state as a matter of law that the visits of a putative father are always detrimental to the illegitimate child's best interests is to exalt rule over reality. There is a growing recognition in courts throughout the nation of the need to determine the welfare of each child in light of his own particular needs and circumstances.

■■ If the biological father of children born out of wedlock has the constitutional right to a hearing before his right to custody is terminated, then it would follow that a biological father of a child born out of wedlock would have the right of visitation with his child.

"A father has a legal right to reasonable access to his bastard child, where he contributes to its support, and there is no showing that such right would be detrimental to the child's best interests." 10 C.J.S. Bastards § 17, p. 84.

"The interest of a putative father in the welfare of his illegitimate offspring is sufficient to authorize him to maintain a proceeding to determine the custody of such children, even as against their mother." Am.Jur.2d Vol. 10, Sec. 62, p. 891.

The judgment is reversed with directions that the trial court conduct a hearing to determine the issues presented by the pleadings.

REED, C. J., and CLAYTON, JONES, PALMORE, STEPHENSON and STERNBERG, JJ., sitting.

All concur.

STEPHENSON, J., dissents.