Charles P. SWEAT, Appellant,

v.

Ida Mae Foley TURNER, Appellee.

Supreme Court of Kentucky.

Dec. 17, 1976.

Rehearing Denied April 1, 1977.

James E. Thompson, Burnam & Thompson, Richmond, for appellant.

John F. Lackey, Lackey & Lackey, Richmond, for appellee.

JONES, Justice.

This appeal is from a judgment that dismissed Charles P. Sweat's petition for custody of his illegitimate 4-year-old daughter, Michelle Foley. The petition was filed three weeks after Eva Foley, Michelle's mother, was killed in an automobile accident, and 12 days after Michelle's release

from the hospital following treatment of her injuries from the same accident. The trial court dismissed Charles' petition for lack of jurisdiction of the subject matter and on the contradictory theory that Charles "committed laches by his neglect to bring an action within a reasonable length of time." However, the trial court found Charles a fit custodian of Michelle.[1]

Charles prosecutes this appeal. He contends that after Eva's death, he had the right to custody of Michelle. Ida Mae Foley Turner, Michelle's maternal grandmother, contends that Charles lacks standing to seek custody, because he had not complied with the provisions of the Uniform Paternity Act.

Michelle is a biracial child, black in appearance. Charles is a Negro; Eva was Caucasian. Eva became pregnant during a high school romance with Charles. Soon after she became pregnant with Michelle her relationship with Charles ceased. Charles then attended college. He is now married and is employed. He and his wife earn $15,000.00 annually. They own a nice home and are not in debt.

During the two years prior to her death, Eva lived in her apartment with John Harris, also a Negro. John was extremely jealous of Charles. He did not want him around Eva or Michelle. Because of John's jealousy, Eva rejected Charles' continuing offer of financial support for Michelle. Both Eva Mae and Charles considered Michelle their child. On a number of occasions Eva told others that Charles was Michelle's father. She gave him a picture of Michelle which he carried in his billfold. Charles also had a picture of Michelle in the family photo album.

In December 1975, Eva was killed in an automobile accident. Michelle was seriously injured. Upon learning of Eva's death and Michelle's injuries, Charles went to the

hospital. He informed the hospital authorities that he was Michelle's father and would pay all expenses incurred. Ida Mae Foley Turner was also at the hospital. She asserted her right to the custody of Michelle and obtained from the Fayette Juvenile Court a temporary emergency order for custody of her granddaughter. When Michelle was released from the hospital Ida Mae took the child to her home in Berea.

This is a case of first impression in the Commonwealth. This court is plowing new ground. Ida Mae's argument that the Uniform Paternity Act vests the county court with the exclusive jurisdiction to determine paternity actions is correct. However, she has misconstrued the plain purpose and intent of the paternity statute. The purpose of the Uniform Paternity Act was designed to give the mother a remedy to compel the putative father to contribute to the support of his illegitimate child. The statute also provides a device affording both the father and mother the right to acknowledge paternity. The statute does not afford the father the right to come into court to have his paternity determined.[2]

The circuit court is vested with exclusive jurisdiction to determine matters relating to custody. KRS 403.280. The Uniform Paternity Act is a horse of another color. It places exclusive jurisdiction of paternity actions in the county juvenile court. KRS 406.021. There is no conflict in these statutes. As to this case these statutes are separate and distinct—as far as the east is from the west, both in purpose and intent. Thus, the Uniform Paternity Act has no application here. When Charles filed his petition for custody of Michelle he publicly declared that he was her father. The Supreme Court of the United States has held that equal protection requires that unwed fathers be given custody rights iden-

---

1. During the proceedings substantial evidence was offered to prove that Charles Sweat was the father of Michelle, and that he was the proper person to have her custody. From a review of the evidence the trial court concluded that Charles is indeed the father of Michelle and that he is qualified to have custody.

2. A person "substantially contributing to the support of the child" could well be the putative father.

tical to those granted to married fathers. See *Stanley v. Ill.*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). Recently, this court held that an unwed father has a constitutional right of visitation even against the mother's wishes. *Phillips v. Horlander,* Ky., 535 S.W.2d 72 (1975). In light of the principles stated in *Stanley* and *Horlander,* supra, the next logical step is to conclude that a biological father of a child born out of wedlock has the right to petition and obtain custody of his child if he is suited to the trust, and if such is in the best interest of the child.

■ This court is of the opinion that to force a putative father to go through the formality of a paternity action would be an exercise in futility. So long as a father can produce reliable evidence that he is the father and is not a stranger to the child, and that the best interest of the child would result, the putative father may petition the circuit court for custody. He doesn't have to proceed through the rocky shoals of a juvenile court.

In this case the Domestic Relations Commissioner heard the evidence. He concluded that Charles was Michelle's father and so recommended to the trial court. When Ida Mae filed exceptions to the commissioner's report the trial court conducted an extensive evidentiary hearing on the exceptions.

It is clear that the trial court had his hour at Gethsemane concerning the matter. His findings of fact and conclusions dictated into the record indicate such. The trial court's finding that Charles Sweat is the natural father is supported by substantial evidence. The trial court's dilemma was that although he did not question Charles' paternity of the child, he concluded that Charles had no legal standing to assert it. The trial court was under the mistaken impression that the Uniform Paternity Act should have been complied with. Like the angel that wrestled Jacob, the trial court wrestled with this vexatious problem. In dictating his findings into the record he said:

"I would say this, now, I assume this will be appealed. If it is, let the Court of Appeals wallow with it as badly as I had to here . . . I do feel that Charles is the father of the child. It may be healthy for the child to know and identify with him, whether she lives in his household or not. . . ."

■■ This court is of the opinion that the trial court had jurisdiction to determine custody in this matter. Because the trial court found that Charles was the father and a fit and proper person to have custody, he should have granted custody of the child to him.

The judgment is reversed. The trial court is directed to set aside the judgment of dismissal. He is further directed to enter judgment granting Charles P. Sweat permanent custody of his infant daughter.

All concur.