**Word Wood SIMPSON, Movant,**

v.

**Cynthia SIMPSON, Respondent.**

Supreme Court of Kentucky.

July 3, 1979.

Weldon, Shouse and William C. Shouse, Shouse, Houlihan & Burrus, Lexington, for movant.

Natalie Wilson and David A. Bratt, Eblen, Milner, Rosenbaum & Wilson, Lexington, for respondent.

LUKOWSKY, Justice.

The genesis of this appeal is an action for dissolution of marriage filed by Cynthia against her second husband, Word, in April of 1977. This was the second marriage for each of them and each had a child by a previous marriage. In her amended petition Cynthia requested that the court grant her custody of her stepson, Hart Simpson or, in the alternative, visitation privileges. Hart was born during Word's prior marriage. The trial court held that its jurisdiction had not been properly invoked on the custody issue and that a nonparent may not be awarded visitation. The Court of Appeals reversed the case on the visitation issue. We affirm the Court of Appeals.

The threshold issue is whether the trial court erred in holding its jurisdiction had not been properly invoked on the issue of custody. KRS 403.260(4)(b) provides: "A child custody proceeding is commenced in the circuit court: By a person other than a parent, by filing a petition for custody of the child in the county in which he is permanently resident or found, *but only if he is not in the physical custody of one of his parents.*" (emphasis added).

■ At the time Cynthia filed her amended petition requesting custody or visitation privileges Hart was residing with her and not with his father. After the amended petition was filed Word took the boy from his stepmother in an effort to defeat the court's jurisdiction. Such an act of self help by a party can not be used to deprive the court of jurisdiction.[1]

At the time of the filing, the amended petition and the residence of Hart with Cynthia were sufficient to vest the trial court with jurisdiction of the issue of custody. The trial court erred in holding that its jurisdiction had not been properly invoked.

■ Cynthia candidly admits that she can not prove that Word is an unfit parent. In order for her to obtain custody of Hart she would have had to prove two things: 1) it is in the best interest of the child to be in the custody of a nonparent, and 2) the custodial parent is unfit. *Chandler v. Chandler*, Ky., 535 S.W.2d 71, 72 (1975). Because Cynthia has admitted she can not prove Word is an unfit parent, we hold as a matter of law that Word is entitled to custody of Hart.

■ The pendent issue is whether the trial court erred in not holding a hearing to determine if it would be in the best interest of Hart to place a limit on the custody award to Word by granting Cynthia visitation privileges. Visitation is a limitation on exclusive custody to be granted where it is in the best interest of the child. *Phillips v. Horlander*, Ky., 535 S.W.2d 72 (1975). It should be granted to a parent or a person standing in loco parentis to a child in a jurisdictionally sound custody proceeding when it is in the best interest of a child to do so. See KRS 403.270(c); *Phillips v. Horlander, supra; Taraboletti v. Taraboletti,* 56 Ill.App.3d 854, 14 Ill.Dec. 350, 372 N.E.2d 155 (1978). KRS 403.320 does not prohibit the grant of visitation to nonparents who stand in loco parentis and are jurisdictionally capable of litigating custody. It merely guarantees that a non-custodial natural parent will not be denied visitation privileges unless it would seriously endanger the child. Uniform Marriage and Divorce Act Sec. 407, Commissioner's Note (1971). A trial court as an incident to custody determination may grant visitation to such nonparents if it is in the best interest of the child.

"Visitation is not solely for the benefit of the adult visitor but is aimed at fulfilling what many conceive to be a vital, or at least a wholesome contribution to the child's emotional well-being by permitting partial continuation of an earlier established close relationship." *Looper v. McManus*, Okla. App., 581 P.2d 487, 488 (1978). A surrogate

---

1. The converse is also true. A nonparent can not legitimately invoke the court's jurisdiction on the issue of custody by seizing a child from a parent prior to filing a petition for custody.

parent can be as devoted to and concerned about a child as a natural parent. The relationship which develops between a surrogate parent and a child can be as close as that of the child to a natural parent.[2] *Gribble v. Gribble*, Utah, 583 P.2d 64 (1978); *Looper v. McManus*, supra; *Spells v. Spells*, 250 Pa.Super. 168, 378 A.2d 879 (1977); Hails, In Loco Parentis and The Relevant Child, 2 Orange Cty. B.J. 712, 715 (1975).

■ This is axiomatic where the nonparent stands in loco parentis and has willingly assumed parental rights, duties and responsibilities toward the child. *Gribble v. Gribble*, supra; *Spells v. Spells*, supra. Where a nonparent alleges such a relationship has been established in a jurisdictionally viable custody action the court should hold a hearing to determine whether the granting of visitation privileges to the nonparent would be in the best interest of the child.

In this case there are some equities which point to Cynthia's being granted visitation privileges. She acted as Hart's mother from the time he was seventeen months old until he was removed from her care by his father almost six years later. While on the meager and incomplete record before us, we are unable to say she should be granted visitation privileges, the evidence certainly is sufficient to require a full hearing to determine whether granting of visitation privileges would be in the best interest of Hart.

The decision of the Court of Appeals is affirmed, the judgment of the Circuit Court is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.

All concur except AKER and STEPHENSON, JJ., who dissent.

STEPHENSON, Justice, dissenting.

The remarkable aspect of the majority opinion is that there is only a fleeting reference to the statutes applicable to custody and visitation. I believe even the majority would agree that for all practical purposes the General Assembly has enacted the Uniform Marriage and Divorce Act which includes the essential portions of the Uniform Child Custody Act. Thus, in matters of jurisdiction and options for child custody the court is bound by the provisions of the statutes. The sense of the majority opinion is couched almost in common law terms as if the court were free to choose in a policy matter. The remark in the majority opinion that the "visitation" statute does not prohibit the grant of nonparents who stand *in loco parentis* and are jurisdictionally capable of delegating custody is pure sophistry. The "visitation" statute does not prohibit the grant of visitation to baby sitters, nannies, housekeepers, Sunday school teachers and various others who may have formed close emotional ties with a child. The majority opinion disregards the statute and opens the door to the butcher, the baker and the candlestick maker to a right to a hearing on "visitation" rights. The phrase "and are jurisdictionally capable of litigating custody" is a red herring. By the terms of KRS 403.260(4)(b), the statute conferring jurisdiction, *any* person may file for custody of a child under the conditions set out in the statute. However, a nonparent must be prepared to show that the parent having custody is *unfit*.

I have no argument with the thesis that in view of the circumstances in this case it would be desirable that the stepmother continue a relationship with the child. However, there is not a word in the statutes or in the commissioner's notes to the Uniform Acts that would even hint that the drafters or the General Assembly even considered the granting of visitation rights to a nonparent such as we have here.

It makes me very uncomfortable to see the majority of this court enacting statutes, which is the effect of the majority opinion.

---

2. The Legislature has acknowledged the significance of the stepparent-stepchild relationship in other areas. KRS 205.310 (stepparent has duty to support a stepchild); KRS 205.010(5) (stepparent included in the definition of parent); KRS 342.085(4) (stepparent included in the definition of parent under the workmen's compensation law); KRS 40.010 (stepfather included in the definition of father under the veteran's bonus statute).

We should leave the enacting of statutes to the General Assembly, where the function belongs, and faithfully enforce valid statutes so enacted without regard to personal opinions of what is most desirable.

The pertinent statutes dealing with this problem are as follows:

403.260. Custody—Jurisdiction, commencement of proceedings.—(1) A court of this state competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(a) This state is the home state of the child at the time of commencement of the proceeding; or

(b) It is in the best interest of the child that a court of this state assume jurisdiction because:

1. The child and his parents, or the child and at least one (1) contestant, have a significant connection with this state; and

2. There is available in this state substantial evidence concerning the child's present future care, protection, training, and personal relationships; or

(c) The child is physically present in this state; and

1. Has been abandoned; or

2. It is necessary in an emergency to protect him because he has been subjected to or threatened with mistreatment or abuse or is neglected or dependent; or

(d) 1. No other state has jurisdiction under prerequisites substantially in accordance with paragraphs (a), (b) or (c) of subsection (1), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine custody of the child; and

2. It is in his best interest that the court assume jurisdiction.

(2) Except under paragraphs (c) and (d) of subsection (1), physical presence in this state of the child, or of the child and one (1) of the contestants, is not alone sufficient to confer jurisdiction on the court of this state to make a child custody determination.

(3) Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody.

(4) A child custody proceeding is commenced in the circuit court:

(a) By a parent, by filing a petition:

1. For dissolution or legal separation; or

2. For custody of the child in the county in which he is permanently resident or found; or

(b) *By a person other than a parent, by filing a petition for custody of the child in the county in which he is permanently resident or found, but only if he is not in the physical custody of one of his parents.* (Emphasis added.)

(5) Notice of a child custody proceeding shall be given to the child's parent, guardian, and custodian, who may appear, be heard, and file a responsive pleading. The court, upon a showing of good cause, may permit intervention of other interested parties.

\*     \*     \*     \*     \*     \*

403.270. Custody—Best interest of child shall determine. (1) The court shall determine custody in accordance with the best interests of the child and equal consideration shall be given to each parent. The court shall consider all relevant factors including:

(a) The wishes of the child's parent or parents as to his custody;

(b) The wishes of the child as to his custodian;

(c) The interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests;

(d) The child's adjustment to his home, school and community; and

(e) The mental and physical health of all individuals involved.

(2) The court shall not consider conduct of a proposed custodian that does not affect his relationship to the child. The abandonment of the family residence by a custodial party shall not be considered

where said party was physically harmed or was seriously threatened with physical harm by his or her spouse, when such harm or threat of harm was causally related to the abandonment.

\* \* \* \* \* \*

403.320. Visitation of minor child.—(1) A parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger seriously the child's physical, mental, moral, or emotional health.

(2) The court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child; but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger seriously the child's physical, mental, moral or emotional health.

The clear expressions of legislative intent contained in these statutes *should* control this case. The majority opinion however decides that a majority of the members of this court knows best and cheerfully amends statutes and enacts new legislation. There is nothing in the statutes or the commissioner's notes to support the reasoning of the majority opinion. The term "the best interest of the child" is never used in the abstract, but always with reference to a parent.

Here the stepmother and the father separated; the father leaves the home; the child is not disturbed and is with the stepmother. At this point there is nothing to suggest that the stepmother could not continue her relationship with the child in an amicable fashion. The stepmother, however, was not satisfied to rely on some residue of goodwill or the probability that an amicable divorce would not interfere with her seeing the child. She was thinking of herself, not the child. She then filed an amended complaint based on KRS 403.-260(4)(b), *asking* for custody of the child. Of course we are told that she really does not desire custody for the reason there is no pretense that the father is unfit. We are told that she must ask for custody in order to secure what she really wants, that is "visitation rights." It is amusing that the majority opinion attributes the father's immediate reaction of removing the child from the stepmother as an effort to defeat the court's jurisdiction and sets the seal of disapproval by the pious recitation that such an act of self-help cannot be used to deprive the court of jurisdiction. The majority attributes a great deal more subtlety to the father than I would. I suggest the father knew nothing of the statute, and the simple and more probable explanation is that he was outraged by the stepmother's allegations in the amended complaint and acted accordingly.

There is no statutory provision providing for a separate action for visitation on the part of a nonparent where a parent has custody. The stepmother candidly admits that the request for custody was a subterfuge to place the visitation issue before the court, and the majority opinion places a seal of approval on a subterfuge to invoke jurisdiction. Perhaps I am unfair in this statement and the majority opinion merely enacts an amendment to the jurisdiction statute providing for such actions to determine visitation rights for nonparents.

The natural mother of this child already has visitation rights as contemplated by the statutes. According to the majority opinion, even if the stepmother here would not prevail at a hearing, the door is wide open. The father conceivably could spend all his time attending hearings to determine if some other person emotionally attached to the child should have "visitation rights."

A clear principle of law that custody and visitation rights are the same is ignored by the majority opinion.

See 59 Am.Jur.2d, Parents and Child, § 45, p. 130:

The right of visitation derives from the right of custody and is controlled by the same legal principles. Thus, as in custody cases, the best interest and welfare of the child is the controlling consideration. And this dominant consideration cannot be subordinated to mere matters of con-

venience. There is no fundamental difference, except perhaps in degree, between the showing a parent must make to have custody and that he must make to be awarded the right of visitation; and the circumstances which work a forfeiture of the right also differ only in degree. A parent denied custody does not thereby lose his natural right to visit and be visited by his children, though the right may be denied if the best interests of the child so demand. And visitation privileges are ordinarily allowed such a parent, if it can be done without jeopardizing the welfare of the child. A court of general jurisdiction may determine such a parent's right of visitation in the exercise of its equity powers. But where an award of custody to a nonresident or a person about to leave the jurisdiction has been determined upon, this conclusion has not been affected by the fact that the visitorial rights of the other parent would thereby be impaired or destroyed, since visitorial rights must give way when in conflict with the child's welfare.

Parents who have custody have the right to determine with whom the child will associate. Accordingly, where a parent or parents have custody, the court will not undertake to give visitation rights to a nonparent—a grandparent, for example—over the parents' objection. But visitation rights are sometimes awarded to nonparents with the parents' consent, or without serious objection by them, in which case they are then generally upheld against later or collateral attack.

98 ALR2d, Anno: Visitation Rights, § 2, p. 326, states:

When a parent has physical custody of a child, either by court decree or by operation of law (as upon the death of a spouse), and firmly resists any move by another person seeking authority to visit the child, the courts are unanimous in denying visitation rights.

See also *Jackson v. Fitzgerald*, 185 A.2d 724, 726 (D.C.App.1962): "The right to visitation derives from the *right* to custody."

The authorities cited in the majority opinion generally are inapposite. *Phillips* involved a natural father of an illegitimate child; *Taraboletti* involved visitation rights of a mother. Neither case mentions by inference, or otherwise, any such rule of law holding that a nonparent could be considered to have a right to even litigate visitation rights. The other cases generally involve foreign jurisdictions at least in one case having a statute authorizing visitation rights by a nonparent.

The fact that the General Assembly has acknowledged stepparent-stepchild relationships in other areas, as pointed out in the footnote of the majority opinion, has an entirely different meaning to me. It would suggest to me that the General Assembly is aware of this fact of life, and had there been any intention to include nonparents in the jurisdictional aspects of the custody statute or the visitation statute the General Assembly would have so provided. After all, as pointed out in the footnote, it has been a subject of concern in other areas.

All in all the majority opinion is an example of complete disregard of applicable statutes.

The Court of Appeals mentions that one of the fastest developing fields of jurisprudence is that of domestic relations and that the law must be cognizant of the ever-changing needs of the citizens. This is a laudable expression of common law ideals on the subject; but, as the statutes control, it is an expression that should be addressed to the General Assembly. I would reverse the Court of Appeals and affirm the trial court.

AKER, J., joins in this dissent.