Mary H. **SUMNER**, Boyd Sumner, and Janice Causey, Appellants,

v.

Ronnie **ROARK**, Appellee.

No. 91–CA–001241–MR.

Court of Appeals of Kentucky.

May 1, 1992.

Publication Ordered June 12, 1992.

Discretionary Review Denied
By Supreme Court Oct. 14, 1992.

Debra A. Catron, Hazard, for appellants.

Teresa G.C. Reed, Hazard, for appellee.

Before DYCHE, MILLER and SCHRODER, JJ.

SCHRODER, Judge.

This is an appeal in a child custody case wherein the alleged father of an illegitimate child was given custody (after the mother's death) over the objections of the maternal grandmother and great-grandparents. The facts are rather involved and a recitation is necessary for a complete understanding of the case.

Tina Cody Roark was married to appellee, Ronnie Roark, until their divorce, May 10, 1988. Although divorced, the parties lived together until Ariana Shae Roark was born on December 16, 1989. Due to complications, Tina was not able to leave the

hospital, so she and Ronnie Roark, the alleged father, asked Boyd and Mary Sumner (the child's maternal great-grandparents) to watch the baby until Tina's health improved. Unfortunately, Tina died December 30, 1989. On January 9, 1990, Janice Causey, the child's maternal grandmother, filed a dependency petition in Perry County Juvenile Court alleging the mother was deceased and not married to the father. On the same date, a trial commissioner signed an "Order For Temporary Custody" in favor of Janice Causey and Mary Sumner of Box 227, Happy, Perry County, Kentucky. On February 6, 1990, the District Judge of Perry County signed a temporary custody order in favor of "... grandmother (sic), Mary Sumner, Box 227, Happy, Kentucky, ...."[1]

Meanwhile, Ronnie Roark filed a complaint on March 21, 1990, in Perry Circuit Court, seeking to get custody of his daughter back from the great-grandparents. On May 23, 1990, the court ordered the Cabinet for Human Resources ("CHR") to conduct a home evaluation of Ronnie Roark, to determine the suitability of his home environment for the return of his child.

On May 25, 1990, Janice Causey filed an action in Knott District Court requesting an emergency custody order, which she received, with a hearing scheduled for June 21, 1990. Janice also filed, with her husband, Ralph Causey, a petition for adoption, dated June 1, 1990, in the Knott Circuit Court, alleging, among other things, that the father was unknown.

On June 4, 1990, Ronnie Roark moved for a Temporary Restraining Order (TRO) against the great-grandparents in Perry Circuit Court seeking to keep them from transferring custody of the infant to thwart the impending circuit court order. The next day, June 5, 1990, Ronnie moved to amend his Perry Circuit Court action to join Janice Causey in order to litigate her interest in the same suit. By June 7, 1990, the circuit court entered a restraining order

against Janice Causey and others from removing the infant from the Commonwealth of Kentucky. Said restraining order was personally served on Janice Causey (Original Record of Perry County, page 50) on June 14, 1990, by Deputy Sheriff Howard, as well as the summons and complaint.

Armed with the numerous cases pending, Janice Causey requested the Court of Appeals issue a Writ of Prohibition against the Perry County Circuit Judge, which writ was denied on June 27, 1990. On July 5, 1990, Janice Causey was personally served notice by a Deputy Sheriff of Perry County of a hearing to be held on July 13, 1990, concerning the temporary injunction relating to custody of said infant. Janice Causey did not appear at the July 13th hearing and by order entered July 27, 1990, the Perry Circuit Judge ordered that Janice Causey appear August 1, 1990, at a hearing to show cause why she should not be held in contempt for violating the earlier court order of June 7th, and to produce said infant. A bench warrant was issued on August 3, 1990, when Causey failed to appear at the show cause.

On July 11, 1990, an unusual document was filed with the Knott County Juvenile Court. A Frank Combs filed a notarized statement saying he was the father of Ariana Shae Roark. The document was neither a request for a dependency action nor a request for a paternity action, just a statement. The Knott County Circuit Court entered a stay on January 15, 1991, in its adoption proceedings pending "... the resolution of the paternity action pending in Knott District Court...."

At the Perry Circuit Court final hearing on April 4, 1991, appellants failed to show. After conducting an evidentiary hearing, the circuit court found the appellee, Ronnie Roark, to be the father, and found him fit to have custody of the infant, which was awarded.

---

1. Subsequently, copies of this order (but not the original order) which were used by appellants in subsequent proceedings (in the Court of Appeals, etc.) were shown to have the name "Mary Sumner" marked out, with the name "Janice

Causey" written in its place, with no initials of the court or anyone else to signify who made the change. Apparently, Janice Causey initially took physical custody of the child pursuant to this "amended" version of the order.

By order entered April 19, 1991, Knott District Court dismissed its action, deferring to the Perry Circuit Court for disposition. A subsequent motion to set aside the Perry Circuit Court order was filed by Attorney Debra A. Catron, stating that she represented all three defendants/appellants, including Janice Causey. The Perry Circuit Court overruled the motion and exceptions to the master commissioner's report by order entered May 14, 1991. The order did, however, allow visitation for Janice Causey. From the record, Causey appears to have kept custody on a visit and ran to Florida or somewhere else to avoid compliance with the different court orders. This appeal followed on May 21, 1991. On June 26, 1991, Janice Causey filed, on behalf of the infant, Ariana Shae Roark, an abuse petition in Knott District Juvenile Court, alleging extreme mental anguish to the child unless custody is given to Janice Causey pending final disposition by the Court of Appeals.[2]

■ The appellants put forth a number of arguments contending that the Perry Circuit Court erred in awarding the natural father custody. The first three arguments allege the appellant, Causey, was never served with a complaint, restraining order, etc., and thus was not properly before the court. Therefore, the court could not enter a judgment against the appellants and, once it learned of these alleged defects, it erred in not setting aside its orders. This Court has reviewed the original record of the Perry Circuit Court. The returns indicate the direct opposite. If the one appellant alleges she was not personally served and the sheriff's deputies lied about personal service, she should have brought the problem to the attention of the circuit court and not simply ignored the court's rulings. With the numerous attorneys involved on behalf of Causey, her allegation that her parents received the notices, her presence in the courtroom during the one hearing, and the subsequent hiding of the infant in direct contradiction of the court's order, the appellant cannot

really expect us to believe she had no notice of the proceedings in the Perry Circuit Court. When Causey brought the matter to the attention of the circuit court, the judge had the master commissioner make findings and recommendations. The commissioner believed Causey had been served and the circuit court concurred. Looking at the evidence presented, we cannot say the circuit court was clearly erroneous. CR 52.01; *Combs v. Combs*, Ky., 471 S.W.2d 715 (1971); *Wells v. Wells*, Ky., 412 S.W.2d 568 (1967). The trial court is in a better position than the appellate court to evaluate the situation. *Gates v. Gates*, Ky., 412 S.W.2d 223 (1967); *Wells, supra.* Even if Causey had not been served, the other appellants would not have standing to contest that matter.

■ The appellants contend that the circuit court did not have jurisdiction to determine paternity due to the fact that the circuit court agreed with the Court of Appeals that jurisdiction of paternity resided in Knott District Court. Appellants have more than twisted the facts. The Court of Appeals *denied* appellant's request for Writ of Prohibition against the Perry Circuit Court. Although the Court related that the Perry Circuit Judge acknowledged Knott District Court had jurisdiction to determine paternity, appellants fail to realize (or don't want to acknowledge) that the acknowledgment filed July 11, 1990, was not a paternity suit, and that both the Knott District Court and Circuit Court subsequently deferred to the Perry Circuit Court for ultimate disposition.

Even though the appellants tried to manipulate the different courts, they were unsuccessful because the courts involved realized that even though the Uniform Paternity Act (KRS 406.021) vests district court with exclusive jurisdiction to determine paternity, circuit court is vested with exclusive jurisdiction to determine custody matters (KRS 403.280). These statutes are not conflicting, but address different

---

2. Janice Causey appears to be hell bent on keeping custody. At the time of oral argument, the record was not clear as to whether Janice had returned to Kentucky or if, at least, the infant had been returned.

needs. The paternity action gives the mother, child, person or agency substantially contributing to the support of the child a remedy to compel support for the illegitimate child. *See Cummins v. Cox*, Ky., 799 S.W.2d 5 (1990). This is a support statute, not a custody statute, and if the parties do not agree to custody or visitation in the paternity action, it must be resolved in circuit court.

In the case of *Sweat v. Turner*, Ky., 547 S.W.2d 435 (1976), our Supreme Court reviewed the case of a father of an illegitimate four-year-old daughter whose mother was killed. Father sought custody from the child's maternal grandmother who also claimed the father had to comply with the provisions of the Uniform Paternity Act, or go to district court first to prove paternity. Not so said the Court. To require the biological father of a child born out of wedlock to "... go through the formality of a paternity action would be an exercise in futility. So long as a father can produce reliable evidence that he is the father and is not a stranger to the child, and that the best interest of the child would result, the putative father may petition the circuit court for custody. He doesn't have to proceed through the rocky shoals of a juvenile court." *Id*. at 437.

The appellants' attorney should also be reminded of the case of *Simpson v. Simpson*, Ky., 586 S.W.2d 33 (1979), wherein the Court stated:

A nonparent cannot legitimately invoke the Court's jurisdiction on the issue of custody by seizing a child from a parent prior to filing a petition for custody.

*Id*. at 35, n. 1.

 Appellants next contend that the appellee failed to join indispensable parties (CR 19.01) to the Perry Circuit Court action—namely, the Cabinet for Human Resources, the grandfather, Bob Cody, and

Frank Combs, the man who filed a subsequent acknowledgement of paternity in Knott District Court. In view of the fact that the appellee has a "right" to the child, subject to a burden on others to show why said right should be terminated (KRS 405.-020(1); *Rallihan v. Motschmann*, 179 Ky. 180, 200 S.W. 358 (1918); *Cupp v. Cupp*, Ky., 302 S.W.2d 371 (1957); *James v. James*, Ky., 457 S.W.2d 261 (1970)), the obligation on appellee is to join only those parties that have actual physical custody and those defendants can then join others if they see it necessary. In the case sub judice, none of the appellants attempted to join parties to prove their burden. In fact, appellants failed to show up at the scheduled hearing on the matter and cannot now complain.[3]

 Finally, the appellants argue that even if appellee is the natural father of the infant, he is not fit or "suited to the trust" for custody of his child. Numerous reported cases have dealt with this specific problem. In 1968, our high Court in the case of *Reynardus v. Garcia*, Ky., 437 S.W.2d 740 (1968), addressed a similar situation where in a mother with custody died leaving the children with the maternal grandparents. The father petitioned for custody citing KRS 405.020(1) and its predecessor, KRS 2016, which then provided: "The father and mother shall have joint custody, nurture and education of their minor children. If either of the parents dies, the survivor, if suited to the trust, shall have the custody, nurture and education of the minor children...." The Court in its decision, quoted extensively from the old case of *Rallihan v. Motschmann, supra*, which is still good law today:

Hence, it appears that in the event of the death of a mother, the husband surviving, as in the instant case, he has a superior right, both under the common

---

3. The record contains a comment to the effect that the appellants would not comply with the circuit judge's order because they called Frankfort and were told the circuit judge's order was invalid and didn't have to be followed. Appellants' counsel appears unwilling to advise her clients otherwise. This Court would like to remind counsel that she would be remiss if she did not explain to her clients that "someone" in either the executive branch or the legislative branch did not have the authority or power to decide a judicial order was not valid. Only a higher court can do that. Until that appeal is completed (or a supersedeas bond posted [CR 62]), her clients must comply.

law and by the statute, if he is suited to the trust, to have the custody, nurture and education of his child. This right seems to appertain to him, both in accordance with the common law of this jurisdiction and by the terms of the statute above quoted. As between the appellee and the mother of the child, his right to the custody was not superior to the right of the mother, and in that state of case, as between him and the mother, in the event of separation, the court, in confiding its custody, would be guided alone by the best interests of the child, in accordance with the doctrine announced by this court before the enactment of the statute, supra; but, when the mother died, the father's right to the custody became superior to any other person, if he was suited for the trust.

In determining his suitability the court will take into consideration his moral fitness and habits, surroundings, age, financial ability, interest and affection for the child, and any circumstances which would be prejudicial to the best interests of the child, including the breaking up of her present relations, but the burden of showing his want of suitability is cast upon the one, who would deny to him the custody of his child upon that ground. *Id.* 200 S.W. at 361–362.

*See also Crase v. Shepherd,* Ky., 240 S.W.2d 548 (1951); *Berry v. Berry,* Ky., 386 S.W.2d 951 (1965); 39 A.L.R.2d 258; *James v. James, supra; Rice v. Hatfield,* Ky.App., 638 S.W.2d 712 (1982); *Wynn v. Wynn,* Ky.App., 689 S.W.2d 608 (1985); and *Fitch v. Burns,* Ky., 782 S.W.2d 618 (1989).

Not only is the burden of proof on the appellants to show the appellee is unfit for custody, but there is also a presumption that the appellee, as surviving parent, is competent and suitable to rear the child. *Reynardus v. Garcia, supra,* at 743. The U.S. Supreme Court has said that anyone seeking to abrogate the right of a parent to child custody has to show unfitness by clear and convincing evidence. *See Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); and *Davis v. Collinsworth,* Ky., 771 S.W.2d 329 (1989). From our review of the record, appellants have not met their burden of proof in attempting to prove Ronnie Roark unfit for custody.

From the foregoing, it is clear that the appellee is entitled to custody of his infant daughter, and therefore, the Perry Circuit Court is affirmed.[4]

All concur.

---

**4.** The appellants are cautioned that the circuit court is free to enforce its orders pending the appeal process. There has been no stay granted. Enforcement includes the use of its contempt powers against the appellants and even their attorney if the court finds or believes they are thwarting the return of the infant as required by the court's order.