**Anna BASHAM, Appellant,**

v.

**Roy WILKINS, Jr., Appellee.**

**No. 92–CA–000168–MR.**

Court of Appeals of Kentucky.

Jan. 8, 1993.

Discretionary Review Denied by Supreme Court May 19, 1993.

Robert H. Littlefield, Louisville, for appellant.

Alec G. Stone, Brandenburg, for appellee.

Before DYCHE, JOHNSON and SCHRODER, JJ.

SCHRODER, Judge:

This is an appeal from an order granting custody of a child born out of wedlock to the natural father in a proceeding subsequent to the paternity action. Although we disagree as to the standard applied by the lower court in awarding custody in this case, we affirm the lower court's decision to award custody to the father.

Matthew Wilkins was born to appellant, Anna Basham, on December 30, 1987. An action was filed by appellant against appellee, Roy Wilkins, in the Meade District Court to establish paternity and set child support. An agreed judgment and order was entered on June 15, 1988, wherein appellee admitted paternity and agreed to pay child support. After entry of that order, appellee petitioned the district court for visitation of Matthew. An agreed order was entered on July 13, 1988, allowing ap-

pellee to have visitation every other weekend and alternate holidays. No custody determination was ever made by the court.

Appellant married Jeffrey Basham on September 11, 1987. During the next three years, she experienced significant mood swings. One especially severe period of depression led appellant to attempt suicide on September 26, 1990. After being hospitalized for one and a half days at Breckinridge Memorial Hospital, appellant voluntarily admitted herself for a two-week treatment program at Western State Hospital. While hospitalized, appellant was diagnosed with Bipolar disorder, a mental illness characterized by alternating periods of mania and depression. Following her hospitalization, appellant was prescribed Eskalith and Elavil which appeared to stabilize her condition.

During appellant's hospitalization, appellant requested that appellee keep Matthew over the weekend for his regularly scheduled visitation time. Appellee picked up the child and thereafter refused to return him to appellant. On October 8, 1990, appellee filed a petition for an order of emergency custody in the Meade District Court. A temporary removal order was entered by the court on October 10, 1990, giving appellee temporary custody.

On November 13, 1990, appellee filed a petition with the Meade Circuit Court seeking permanent custody. In his petition, appellee alleged that appellant and Jeffrey Basham were not properly caring for Matthew and that it would be in Matthew's best interest to grant appellee custody. Appellee subsequently amended his petition, alleging that Matthew's emotional and physical well being were endangered by being in appellant's custody.

A hearing was held before the domestic relations commissioner on June 20, 1991. Testifying for appellee were: appellee; appellee's wife since April 22, 1989, Susan Wilkins; Vicki Ammons, a friend of Wilkins who baby-sat Matthew; and Bryan Ammons, Vicki's husband. Testifying for appellant were: appellant; Jeffrey Basham; and Juanita Basham, Jeffrey's mother who sometimes watched Matthew.

In his recommended findings of fact, the domestic relations commissioner applied the "serious endangerment standard" pursuant to KRS 403.340(2)(c) for a modification of custody, noting that "it is implicit in any determination of parentage in District Court ... that it has made a determination of custody." The commissioner then found that appellee failed to carry his burden of proof. Appellee filed exceptions to the commissioner's report, and the matter was submitted to the Meade Circuit Court for its final determination.

In its final order, entered December 23, 1991, the Meade Circuit Court declined to follow the commissioner's recommendations, finding that the appellant's home environment "seriously endangers his physical, mental, moral and emotional health and that there would be no harm caused by a change of environment. KRS 403.-340(2)(c)." The court cited inappropriate physical discipline on the part of Jeffrey Basham and appellant's mental state and behavior when not on her medication as support for its decision. From that order, appellant now appeals.

Appellant first argues that the trial court should apply the "serious endangerment" standard in KRS 403.340(2)(c) for a modification of custody rather than the "best interest of the child" standard in KRS 403.-270 for an initial custody determination. The trial court in this case did apply the "serious endangerment" standard, but apparently appellant seeks to peremptorily counter the impending argument of appellee that the less strict "best interest of the child" standard should have been applied.

■ At common law, the mother, as natural guardian, had the sole right to custody and control of the child. *Baker v. Winfrey,* 54 Ky. 499, 15 B.Mon. 499 (1854). It was in *Phillips v. Horlander,* Ky., 535 S.W.2d 72 (1975), that a father's legal right to visitation of his illegitimate child was first upheld in Kentucky. In *Phillips, supra,* the Court recognized the necessity and benefit of the child having contact with the father:

In many instances the putative father may instill in the child a sense of stability. He may develop qualities in the child which the mother is uninterested, unwilling or incapable of developing. To the extent that a father can perform such a valuable service his presence becomes exceedingly important. *Id.* at 74.

The United States Supreme Court held in a case where the father sought custody after the mother's death, that equal protection requires unwed fathers to be given the same custody rights as married fathers. *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). In *Sweat v. Turner*, Ky., 547 S.W.2d 435 (1976) and *Sumner v. Roark*, Ky.App., 836 S.W.2d 434 (1992), the Kentucky Courts addressed the father's right to custody of his illegitimate child after the mother's death. In *Sweat, supra,* the Court stated:

So long as a father can produce reliable evidence that he is the father and is not a stranger to the child, *and that the best interest of the child would result,* the putative father may petition the circuit court for custody. (Emphasis added) *Id.* at 437.

Last, but not least, KRS 403.270 itself leaves little doubt that the "best interest of the child" standard should be applied as it provides, "[T]he court shall determine custody in accordance with the best interest of the child *and equal consideration shall be given to each parent."* (Emphasis added). *See Jones v. Jones,* Ky.App., 577 S.W.2d 43 (1979). We reiterate the following sentiment expressed in *Phillips, supra:*

This court is of the opinion that now is the time to rend the veil of puritan precepts through which unwed fathers are viewed as nonpersons. *Id.* at 74.

Accordingly, the "best interests of the child" standard applies in determining custody of children born out of wedlock and gone is our preference for the mother of the illegitimate child.

■ The domestic relations commissioner in this case applied the "serious endangerment" standard for modification of custody because he was of the opinion that a custody determination had been implicitly made in the previous paternity action in district court. We do not agree. While the appellant voluntarily had custody of the child and the district court allowed appellee visitation, no custody determination was ever made by the court considering the best interest of the child. *See State ex rel. Laughlin v. Hugelman,* 219 Neb. 254, 361 N.W.2d 581 (1985). Moreover, it has been held that the district court does not have jurisdiction to make a custody determination in a paternity action. *Cummins v. Cox,* Ky., 799 S.W.2d 5 (1990); *Sumner v. Roark,* Ky.App., 836 S.W.2d 434 (1992). A paternity action is for support, while visitation and custody disputes must be resolved in circuit court. *Sumner, supra.*

We are compelled to point out that in a case such as the one at hand where the mother voluntarily has custody for a period of time before the father petitions for custody, clearly the length of time which the child has been with the mother and the bonding that has occurred during that time would be significant factors in determining what is in the best interest of the child. However, such factors were outweighed in this case by other evidence that it was in the best interest of the child for appellee to have custody.

■ The trial court's findings of fact regarding custody will not be overturned unless clearly erroneous. *Reichle v. Reichle,* Ky., 719 S.W.2d 442 (1986). We believe there was substantial evidence to support the trial court's findings and ultimate decision to award appellee custody, even though it applied the incorrect standard.

■ The court was concerned about appellant's bipolar disorder and her ability to parent when affected by the illness. There was ample evidence questioning appellant's parenting skills due to the illness. Appellant's suicide attempt was the most extreme example. During another one of her depressive episodes, appellant left her husband and stayed for a month with Matthew and her other child in a motel.

Appellant maintains the trial court erred in considering appellant's mental condition

at a time other than the time of the hearing. We cannot agree. Appellant's past mental state and her ability or inability to parent during that state is entirely relevant to appellant's ability to parent in the future because appellant's mental state may and has changed. As to appellant's contention that her condition is being controlled by medication, there was evidence in the record that she suffered a severe depressive episode after being on the medication. There was also evidence in the record (the home study by Social Services) that the medication itself has negatively affected her ability to parent.

The trial court also had legitimate concerns about Jeffrey Basham's inappropriate use of physical discipline on the small child. More significantly, there was evidence that a previous child of appellant was removed from her home, apparently due to neglect. Finally, the evidence as to appellee and his wife's ability to care for the child was favorable. The child has a close relationship with appellee and his wife and there was evidence he is more happy, stable, and secure in their care.

The remaining issue raised by appellant is that the trial court erred in rejecting the recommended findings of fact of the domestic relations commissioner. The trial court can adopt, modify or reject the commissioner's recommendations. CR 53.06(2). The trial court had the benefit of the full record, but placed greater weight on certain evidence than did the commissioner. The trial court simply drew different conclusions from the evidence, supporting them with his own findings of fact. We see nothing impermissible in his so doing since his findings were supported by substantial evidence.

For the reasons stated above, the judgment of the Meade Circuit Court is hereby affirmed.

All concur.