RENDERED:  MAY 23, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1102-MR

AMBER HENSON                                                    APPELLANT


APPEAL FROM LEWIS CIRCUIT COURT
v.        HONORABLE JEFFREY L. PRESTON, JUDGE
ACTION NO. 23-CI-00003


CHRISTOPHER HENSON                                              APPELLEE

<u>OPINION AFFIRMING IN PART
AND REMANDING</u>

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; A. JONES AND LAMBERT,
JUDGES.

JONES, A., JUDGE:  Amber Henson appeals from the Lewis Circuit Court's
findings of fact, conclusions of law, and decree of dissolution of marriage,
challenging the family court's decisions concerning custody, timesharing /
visitation, spousal maintenance, and allocation of marital debt.  Having carefully
reviewed the record, we discern no reversible error in the family court's
determination of custody, visitation, or maintenance.  However, in the interest of

clarity, we remand for the limited purpose of entering a specific order confirming Christopher's responsibility for the tax debt.

## I. BACKGROUND

Amber and Christopher Henson were married in 2009 and have two minor children: L.H., born in 2009, and R.H., born in 2011. Although the parties previously initiated dissolution proceedings, they reconciled. On January 9, 2023, Christopher filed a second petition for dissolution following an incident in December 2022 in which Amber, in the presence of the children, placed a gun to her head and threatened/attempted suicide. Law enforcement responded, and Amber was transported to a mental health facility. She discharged herself after six days. Christopher subsequently filed for an emergency protective order, which resulted in the entry of a domestic violence order ("DVO").

The family court held a temporary custody hearing at which multiple witnesses testified. A Lewis County Sheriff's Deputy stated that Amber admitted both to a physical altercation with Christopher and to holding a gun to herself. Christopher testified the children had been emotionally affected, reporting nightmares, stomach issues, and internalized anxiety. He stated that R.H.'s school performance had declined and that she was receiving homebound instruction. He also testified that Amber had a longstanding mental health history, had been noncompliant with her medications, and that her emotional outbursts were

unpredictable. Following the hearing, the family court granted the parties temporary joint custody of the children with Christopher being named the primary residential custodian. Amber was granted temporary supervised timesharing every other weekend.

The family court conducted a final hearing in July 2023. Both parties testified, as did the children's therapist and Amber's therapist. Christopher testified that he supported continued supervised visitation but believed decision-making authority should rest solely with him. He described challenges in communication with Amber, including frequent off-platform messaging[1] and repeated phone calls when he did not immediately respond. He expressed concern that Amber made disparaging comments about him in the children's presence. Due to her mental state and the events surrounding her suicide attempt, he reiterated his request for sole custody. He also noted that, because of his work schedule, his mother often provides childcare during the week.

At the time of the hearing, Christopher was earning approximately $56,000 annually, a significant reduction from prior earnings of up to $210,000. He attributed the pay cut to an inability to focus following Amber's suicide attempt but stated he anticipated returning to higher earnings once the litigation concluded.

---

[1] The parties had previously been ordered to communicate with one another via a family-court approved third-party app.

The parties owned modest assets, including a home on the Ohio River purchased for approximately $140,000, with a remaining mortgage balance of roughly $136,000. Christopher remained in the marital home with the children. Amber had not worked consistently during the marriage but briefly held jobs during a prior separation.

The children's therapist, Paula Russell, testified that both children struggle with fear and anxiety. They reported witnessing Amber's suicide attempt and described her moods as unpredictable, including during visitation. R.H. reported that Amber had told her she wished Christopher had let her die. Both children expressed a desire to see Amber but opposed overnight visits, citing uncertainty about what might occur. They expressed a preference to remain in their father's custody. Ms. Russell testified that she was hesitant to recommend unsupervised visitation given the children's fear and the consistency of their accounts, which were made in separate sessions.

Amber's therapist, Evan Bothman, testified that Amber was compliant with therapy and medication, though Ms. Bothman was not Amber's prescribing provider. She did not believe Amber posed a danger to herself or others and saw no clinical reason to oppose unsupervised visitation. She acknowledged, however, that Amber continued to experience heightened anxiety due to the pending litigation and had a strained relationship with the children.

Amber confirmed that she resides with her mother. She acknowledged a recent verbal argument with her mother during visitation, though she denied it was physical. She testified that the children were nearby and may have overheard the exchange. Amber admitted her relationship with the children was strained. She testified that they were unresponsive during visits, and often acted as if she were not present. She sought joint custody and equal timesharing, though she conceded that her actions likely impacted the children's feelings toward her.

Amber also admitted to frequently contacting Christopher, sometimes repeatedly in a short time span, and acknowledged that she sometimes "fished" for information about his romantic life. She characterized this behavior as reciprocal with the children. She also sent texts to R.H. expressing disappointment in how she was being treated by the family, which she did not view as inappropriate.

On August 17, 2023, the family court entered its findings of fact, conclusions of law, and decree of dissolution. It awarded sole custody of the children to Christopher, continued supervised visitation for Amber, and denied her request for maintenance. Despite referencing Christopher's agreement to assume

the tax debt, the family court's order did not explicitly order him to do.  This

appeal followed.[2]

## II.  STANDARD OF REVIEW

We "review the family court's findings of fact under a clearly

erroneous standard of review, giving due regard to the opportunity of the family

court to judge the credibility of the witnesses." *Blackaby v. Barnes*, 614 S.W.3d

897, 900 (Ky. 2021).  If the findings of fact are supported by substantial evidence

and if the correct law is applied, a family court's ultimate decisions regarding

matters such as custody, timesharing, maintenance, and allocation of debts and

assets will not be disturbed, absent an abuse of discretion.  *Coffman v. Rankin*, 260

S.W.3d 767, 770 (Ky. 2008).

"Abuse of discretion implies that the family court's decision is

unreasonable or unfair.  Thus, in reviewing the decision of the family court, the test

is not whether the appellate court would have decided it differently, but whether

the findings of the family court are clearly erroneous, whether it applied the correct

---

[2] Christopher filed a cross-appeal, Appeal No. 2023-CA-1143-MR, related to certain personal property (firearms) he was ordered to return to Amber arguing that the circuit court erred in ordering the property to be returned after he had testified that he sold the firearms during the pendency of dissolution proceedings.  Following completion of briefing, the parties entered into an agreed order resolving the firearms issue.  On May 9, 2024, the family court entered an order providing that Christopher shall pay Amber $2,000.00 from his share of the proceeds from the sale of certain personal property, as compensation for her interest in the firearms.  Thereafter, the parties filed a joint motion to dismiss the cross appeal, which we granted by order entered June 27, 2024.

law, or whether it abused its discretion." *B.C. v. B.T.*, 182 S.W.3d 213, 219–20 (Ky. App. 2005) (footnote omitted). As in all cases, questions of law, including the interpretation of statutes and application of legal standards, are reviewed *de novo*. *Gonzalez v. Dooley*, 614 S.W.3d 515, 519 (Ky. App. 2020).

### III. ANALYSIS

#### A. *Custody*

Amber first argues that the family court erred in awarding Christopher sole custody of the children. Kentucky law presumes that joint custody and equal parenting time are in the child's best interest. KRS[3] 403.270(2). That presumption, however, does not apply when a DVO has been entered against one of the parties. KRS 403.315 ("If a domestic violence order is being or has been entered against a party by another party or on behalf of a child at issue in the custody hearing, the presumption that joint custody and equally shared parenting time is in the best interest of the child shall not apply as to the party against whom the domestic violence order is being or has been entered."). In such cases, the family court must consider the best interest factors in KRS 403.270(2) without affording deference to joint custody. *Anderson v. Johnson*, 350 S.W.3d 453, 457 (Ky. 2011) ("KRS 403.270 directs the court to 'consider all relevant factors' and provides a non-exhaustive list of factors that are relevant to the best interests of the

---

[3] Kentucky Revised Statutes.

child."). In doing so, the family court is not required to individually discuss each factor in its written findings. *Smith v. McCoy*, 635 S.W.3d 811, 817 (Ky. 2021). It is enough for the court to "engage in at least a good faith effort at fact-finding and that the found facts be included in a written order." *Anderson*, 350 S.W.3d at 458.

One of the best interest factors is "[t]he mental and physical health of all individuals involved[.]" KRS 403.270(2)(f). Here, the evidence established that Amber had a long history of mental health issues. The children's therapist testified that both children witnessed Amber's suicide attempt and reported prior incidents as well. The therapist expressed concern over Amber's unpredictable behavior, testified that the children were anxious around her, and stated that they did not wish to have overnight visits. Amber's own therapist acknowledged that Amber and the children had a strained relationship. Amber herself conceded that her behavior had negatively affected her relationship with the children and admitted that they were largely unresponsive during visitation.

The record also reflects that the parties are unable to co-parent effectively. Christopher testified that Amber frequently disregarded court-ordered communication protocols, repeatedly called or messaged him, and made disparaging remarks to the children. Amber admitted to persistently contacting Christopher and acknowledged that she had questioned their daughter about how she was treated.

While Amber contends that her mental health history alone should not bar joint custody, the family court did not rely solely on her diagnosis. Rather, it considered the totality of the circumstances, including the nature and timing of the suicide attempt, the presence of the children, and the lasting emotional impact on them. *See Basham v. Wilkins*, 851 S.W.2d 491, 494 (Ky. App. 1993) (recognizing that a parent's past mental state is relevant to her future ability to parent).

The family court was entitled to credit the testimony of the children's therapist over that of Amber's. "[D]ue regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." *Humphrey v. Humphrey*, 326 S.W.3d 460, 463 (Ky. App. 2010). The children expressed a clear and consistent preference to remain with Christopher, and the therapist's recommendation aligned with their stated wishes. Additionally, Christopher's testimony supported that Amber's erratic communication style hampered the parties' ability to co-parent the children. *Gertler v. Gertler*, 303 S.W.3d 131, 137 (Ky. App. 2010). The court reasonably found that awarding sole custody to Christopher was in the children's best interest.

Under these circumstances, and in light of the statutory factors and the evidentiary record, we find no abuse of discretion in the family court's decision to award Christopher sole custody.

## B. *Visitation*

Amber next argues that the family court erred in declining to award her equal parenting time. A presumption of equal timesharing applies in all custody determinations unless the court finds by a preponderance of evidence that it is not in the best interest of the child. KRS 403.270(2). However, that presumption is rebutted where a DVO has been entered. KRS 403.315. In such cases, the family court must consider the statutory best interest factors in determining an appropriate timesharing arrangement, without affording any presumption in favor of equal time.

As discussed above, the family court was presented with substantial evidence that the children had experienced emotional trauma resulting from Amber's suicide attempt and her erratic behavior. The children's therapist testified that they did not feel safe staying overnight with Amber and expressed fear about her unpredictability. She recommended that visitation remain supervised. The therapist's opinion was consistent with the children's independently expressed preferences and clinical presentation. While Amber's therapist disagreed, the family court was entitled to resolve the conflict in testimony and credit the professional who had a direct therapeutic relationship with the children.

Amber also argues that the family court gave undue weight to the temporary nature of her living arrangements. However, she offered little evidence

of concrete efforts to secure stable housing or expand her work hours. She also failed to demonstrate that she had a clear plan to address the parenting concerns identified by the children's therapist. The court reasonably found that, under the current circumstances, unsupervised or extended parenting time was not in the children's best interest.

Although Amber's desire to rebuild her relationship with the children is commendable, the family court's decision to continue supervised visitation was supported by substantial evidence. The court did not foreclose the possibility of future modification based on changed circumstances but was not required to award increased time at the children's emotional expense. *See Drury v. Drury*, 32 S.W.3d 521, 525 (Ky. App. 2000) (recognizing that a parent's desire to repair the relationship must be balanced against the child's safety and emotional well-being).

We find no abuse of discretion in the family court's decision to limit Amber's timesharing to supervised visitation.

## C. *Maintenance*

Amber also challenges the family court's denial of her request for maintenance. Under KRS 403.200(1), a court may grant maintenance only if it finds that the requesting spouse: (a) lacks sufficient property, including marital property apportioned to them, to provide for their reasonable needs; and (b) is unable to support themselves through appropriate employment.

Amber bore the burden of proving both statutory elements. At the time of the final hearing, she was employed part-time, working approximately 20 hours per week at a cleaning service, earning $12.00 per hour. She testified that she chose the position because it allowed her to have weekends free for visitation. She acknowledged she had not sought full-time work or explored higher-paying opportunities.

Although Amber requested between $2,000 and $3,000 in monthly maintenance, she failed to submit any written documentation of her expenses prior to the hearing and required by FCRPP[4] 5, incorporated by reference in LFRP[5] 705.[6] At the hearing Amber testified (without accompanying documentation) to some of her monthly expenses, including $35.00 for a cell phone, $60.00 for car insurance, and approximately $50.00 per month in hygiene products. She estimated $200.00 in food costs for the weekends she exercised visitation, but did not account for her personal food expenses. She testified that she lived rent-free with her mother but had researched apartment listings on social media and expected rent to be between $800 and $1,000. She had not submitted any housing

---

[4] Kentucky Family Court Rules of Procedure and Practice.

[5] Rules of Court Practice and Procedure for the 20th Judicial Circuit, Family Court Division, Greenup and Lewis counties.

[6] LFRP 5 provides: "All parties must comply with the filing requirements of FCRPP 2 through FCRPP 9."

applications, contacted leasing agents, or investigated eligibility for public assistance or subsidized housing.

In light of the absence of documented expenses, the lack of any concrete budget, and the availability of part-time income with potential for additional work, the family court was well within its discretion to conclude that Amber failed to establish her entitlement to maintenance. *See Russell v. Russell*, 878 S.W.2d 24, 25 (Ky. App. 1994) (holding that bare assertions without evidence of actual expenses do not support an award of maintenance). The court was not required to assume that Amber's living expenses would significantly increase or to speculate about her future financial obligations in the absence of competent proof. *See Moss v. Moss*, 639 S.W.2d 370, 372 (Ky. App. 1982).

Accordingly, we discern no abuse of discretion in the family court's decision to deny maintenance.

### D. Allocation of Debt

Amber next argues that the family court erred in its handling of the parties' outstanding tax obligations. The family court is not required to divide debts equally but must do so in a manner that is just, taking into account the parties' respective abilities to pay and the circumstances surrounding the incurrence of the debt. *Smith v. Smith*, 235 S.W.3d 1, 6 (Ky. App. 2006).

The record reflects that the parties owed substantial federal and state income tax liabilities from the years 2017 through 2022. Christopher acknowledged the debts and testified that he had historically handled all tax filings and financial obligations during the marriage. At the final hearing, he affirmatively stated that he did not object to assuming responsibility for the outstanding tax debt. Amber likewise requested that the court assign the tax liabilities to Christopher. The family court's written findings referenced the existence of federal and state tax debt and Christopher's willingness to assume the debt; however, its final written order did not explicitly order that Christopher was to assume the debt.

Although Christopher does not dispute responsibility and the parties appear to have reached a consensus on this issue, we conclude that a limited remand is appropriate to allow the family court to enter a clear directive in its final order expressly assigning the tax debt to Christopher. A formal written order will ensure clarity for enforcement and avoid future disputes.

Accordingly, while we discern no substantive error in the court's allocation of other debts, we remand for the limited purpose of entering an express order regarding the tax obligations.

## IV. CONCLUSION

For the foregoing reasons, the order of the Lewis Circuit Court is affirmed in all respects, with the exception of the allocation of the parties' outstanding tax debt. This matter is remanded for the limited purpose of entering an express finding regarding Christopher's responsibility for that obligation.

ALL CONCUR.

BRIEF FOR APPELLANT:

Erin H. Hall
R. Stephen McGinnis
Greenup, Kentucky

BRIEF FOR APPELLEE:

Delores Woods Baker
Maysville, Kentucky