Lois Schroeder POSEY and Robert
B. Posey, Appellants,

v.

Aline Antoinette Poret POWELL
and Robert James Posey, Sr.,
Appellees.

No. 96–CA–002842–MR.

Court of Appeals of Kentucky.

March 27, 1998.

Robert C. Manchester, Paducah, for Appellee.

Gary R. Haverstock, Michael M. Pitman, Murray, for Appellee, Aline Antoinette Poret Powell.

Before EMBERTON, HUDDLESTON and JOHNSON, JJ.

## OPINION

JOHNSON, Judge.

Lois Schroeder Posey and Robert B. Posey (the Poseys) have appealed from a judgment of the McCracken Circuit Court entered on August 12, 1996, which dismissed their petition for custody of, and their motion for visitation with, their grandchild, Robert James Posey, Jr. (B.J.). The dismissal was based upon the trial court's determination that the Poseys lacked standing to seek such relief. We reverse and remand.

The facts necessary for an understanding and resolution of the legal issue presented by this appeal are neither complex nor in dispute. The Poseys are the parents of Robert James Posey, Sr. (Robert), who, from 1990 until 1995, cohabited with, but never married, the appellee, Aline Antoinette Poret Powell (Toni). On July 4, 1992, B.J. was born to Toni and Robert in New Orleans, Louisiana. The Poseys were present for B.J.'s birth and

helped Toni and Robert move to Kentucky when B.J. was a few weeks old.

For the next three years, the Poseys were the primary caretakers of B.J.[1] Toni and Robert stopped living together and ended their relationship in June 1995. On January 9, 1996, the Poseys filed a petition for temporary and permanent custody of B.J. They alleged that they had taken care of B.J. since he was ten days old, that Toni had visited with the child for only a total of 51 days in 1995 and fewer days than that in previous years, and that the child had serious medical problems requiring ongoing treatment that they were accustomed to providing him.

On January 13, 1996, Toni married Randy Powell. Toni and her husband moved to Marshall County, obtained an unlisted telephone number, and decided to eliminate any contact between B.J. and the Poseys. The Poseys responded by moving the trial court for visitation with B.J. Toni moved to dismiss both the custody petition and the motion for visitation on the ground that the Poseys lacked standing to proceed as paternity of B.J. had not been established.

A hearing on the issue of visitation was conducted before the Domestic Relations Commissioner (the Commissioner) on June 26, 1996. Although Toni acknowledged before the Commissioner that Robert was the father of B.J., she renewed her motion to dismiss for lack of standing. In his recommendations, the Commissioner concluded in part as follows:

(1) The Court has jurisdiction of the parties and the child, the subject matter of this action.

(2) Due to the close relationship between the paternal grandparents and the child, they should have regular visitation with the child.... In rea[ch]ing this conclusion[,] it is determined that the child will benefit from the maintena[n]ce of his relationship with the [Poseys], and, therefore, it is in his best interest that grandparent visitation be permitted.

(3) Due to the refusal of any visitation by Respondent, Toni Powell, between the child and Petitioners, and the a[n]imosity resulting from the Petitioner's [sic] filing this action for custody, the parties should be required to attend the extended LEEP [Life Skills Education to Empower People] program and demonstrate to the Court that they have done so.

(4) At the specific request of Respondent, Toni Powell, for a ruling on her motion to dismiss, it is concluded that her motion should be overruled as she admitted that: (a) Robert James Posey, Sr., is the father; and (b) the information on the Louisiana certificate of live birth is correct as to the natural father.

Toni filed exceptions to the Commissioner's recommendations alleging that the Poseys had no standing to seek custody or visitation and that visitation was not in B.J.'s best interest. The trial court agreed with her first contention and granted her motion to dismiss the petition for custody and motion for visitation. The trial court specifically determined that as paternity of B.J. had not been established pursuant to KRS 406 *et seq.*, the Poseys "have no *legal* relationship with the child in this action and therefore are prohibited from filing any petitions for custody or visitation" (emphasis added).

■ The issue presented by the Poseys on appeal is whether putative grandparents have standing to pursue the rights of reasonable visitation under KRS 405.021, and custody under KRS Chapter 403. The grandparent visitation statute reads as follows:

(1) The Circuit Court may grant reasonable visitation rights to either the paternal or maternal grandparents of a child and issue any necessary orders to enforce the decree if it determines that it is in the best interest of the child to do so. Once a grandparent has been granted visitation rights under this subsection, those rights shall not be adversely affected by the termination of parental rights belonging to

---

1. The parties do not agree on how much time B.J. spent with the Poseys, but even by Toni's account, it was considerable. She testified that she worked during this period and because she and Robert could not afford day care, the Poseys had daily responsibility for B.J. She also acknowledged that the Poseys frequently took B.J. to the doctor and kept him overnight because his medical condition required that he not be moved a lot.

the grandparent's son or daughter, who is the father or mother of the child visited by the grandparent, unless the Circuit Court determines that it is in the best interest of the child to do so.

KRS 405.021(1). It is apparent to this Court that this statute clearly and plainly extends visitation rights to any and all grandparents regardless of whether their grandchild was born in or out of wedlock, and regardless of whether his or her paternity has been legally established. Stated differently, there is no requirement in the statute that a biological grandparent of a grandchild born out of wedlock obtain a court order establishing paternity before moving the circuit court for visitation. The trial court's imposition of this burden on the Poseys was, therefore, erroneous as a matter of law.

 In construing our statutes we must "ascertain and give effect to the intent of the General Assembly. We are not at liberty to add or subtract from the legislative enactment nor discover meaning not reasonably ascertainable from the language used." *Beckham v. Board of Education of Jefferson County*, Ky., 873 S.W.2d 575, 577 (1994). *See also Department of Corrections v. Courier–Journal and Louisville Times*, Ky.App., 914 S.W.2d 349 (1996). Clearly, it is not our function to "add words and meaning to a statute that is clear on its face." *Cole v. Thomas*, Ky.App., 735 S.W.2d 333, 335 (1987). In *Cole* this Court declined to construe KRS 405.021 to extend visitation rights to great-grandparents. Instead, it held that the statute gave the right "to file such a

petition to four people, the child's four grandparents." *Id.* at 334–335.

By requiring the existence of a "legal relationship" in addition to the biological one commonly associated with the term "grandparent," the trial court has changed the meaning of the statute to exclude putative grandparents. It has added words of exception to the statute so as to preclude the exercise of visitation rights by a grandparent whose child, for whatever reason, has not had the paternity of the grandchild legally established. We believe if the Legislature had intended to make an exception for putative grandparents, it would have followed the example of other states that have so provided. Examples of legislation requiring that paternity be established in order to confer standing on a party seeking visitation include Ohio Revised Code Annotated, §§ 3109.11–3109.12,[2] New Hampshire Statutes Annotated, § 458:17–d,[3] and Nebraska Revised Statutes, § 43–1802.[4] However, as the Legislature made no such exception, we must "presume[ ][it] intended to make none." *Bailey v. Reeves*, Ky., 662 S.W.2d 832, 834 (1984).

We follow the intent of the Legislature that is evidenced from the plain words employed—"paternal or maternal grandparents of a child"—and from the evolution of the statute since its passage in 1976, which has increasingly broadened the class of those having standing,[5] in holding that the Poseys are among those grandparents KRS 405.021

2. Subsection (A) of § 3109.12 reads in part as follows:

If a child is born to an unmarried woman, the parents of the woman and any relative of the woman may file a complaint requesting ... VISITATION rights with the child. If a child is born to an unmarried woman and if the father of the child has acknowledged the child and that acknowledgment has become final ... the father, the parents of the father, and any relative of the father may file a complaint requesting ... VISITATION rights with respect to the child.

3. Subsection IV of this statute reads: "If the parent of the minor child is unwed, then any GRANDPARENT filing a petition under this section shall attach with the petition proof of legitimation by the parent. ..."

4. Subsection (1) provides in part as follows: "A grandparent may seek visitation with his or her minor grandchild if: ... (c) The parents of the minor child have never been married but paternity has been legally established."

5. Originally, grandparents could seek visitation of their grandchild only when the child's parent was deceased. In 1984, the statute was amended to extend visitation to grandparents when the parent or parents of the child are not deceased. In 1996, the statute was again amended to allow continuation of visitation following the termination of parental rights. These changes dispel Toni's argument that the rights conferred upon grandparents are derived from and are contingent upon the continuation of the parent-child relationship.

endows with standing to petition for reasonable visitation with their grandchild.

In her brief, Toni argues that a person petitioning for visitation under KRS 405.021, "must prove that they fall within the category of either paternal or maternal grandparents." We agree that where paternity of a child is at issue, proof that the petitioner is in fact a maternal or paternal grandparent is necessary before visitation can be awarded. However, Toni confuses the issue of standing with a petitioner's burden of proving paternity. Standing concerns the right to bring an action in the first instance. The burden of proof concerns the evidence necessary to prevail on the merits of the action. We reiterate, the Legislature has not restricted standing to a grandparent whose grandchild's paternity has been previously established. Toni admitted that Robert is B.J.'s father. Thus, the proof before the Commissioner was uncontested that the Poseys are B.J.'s paternal grandparents.[6]

■ Toni further contends that even if the Poseys have standing to seek visitation or custody, they cannot establish their relationship to B.J. as their proof did not conform to that required by KRS 406.021, the Uniform Paternity Act. This statute, as noted in *Sumner v. Roark,* Ky.App., 836 S.W.2d 434, 438 (1992), "gives the mother, child, person or agency substantially contributing to the support of the child a remedy to compel support for the illegitimate child." As the Poseys point out however, neither compliance with KRS 406.021, nor its proof requirements, are necessary to obtain custody by a natural parent. *Id.* Just as a putative father may petition for and obtain custody with "reliable evidence that he is the father," and do so without going through the "rocky shoals of juvenile court," *id.* citing *Sweat v. Turner,* Ky., 547 S.W.2d 435, 437 (1976), putative

grandparents may, with reliable evidence, establish their entitlement to visitation or custody rights.

Again, we feel constrained to point out that there has never been a question about the biological relationship between the Poseys and B.J. Since there was no factual issue regarding paternity, to have required a district court order of paternity would have been not only a waste of judicial resources, but it would have punished the grandparents for their child's disinterest in asserting his parental rights. Indeed, under the trial court's determination that a "legal relationship" is required in order to confer standing to seek visitation or custody, those couples living together without the benefit of marriage would be able to frustrate the Legislature's grant of such rights, whereas those couples who are married could not. Fortunately for the Poseys and other similarly situated grandparents, in this jurisdiction, a grandparent is not to be deprived of standing to prove that visitation or custody is in the grandchild's best interest merely because the grandchild's paternity remains to be determined.

■ Next, we hold that the trial court erred in dismissing the Poseys' petition for custody. It reasoned that in order to succeed, the Poseys "must first be, in the eyes of Kentucky law, grandparents and they must also allege and prove unfitness" of Toni. The trial court concluded that the Poseys' petition failed to allege that Toni was an unfit parent and that the Poseys did not have a legal relationship with B.J., both of which precluded them from proceeding. We have reviewed the petition filed by the Poseys and disagree that it is lacking in allegations sufficient to proceed on the merits of the custody issue. Although the Poseys did not specifically state that Toni is "unfit," they did make

6. Toni has never disputed that the Poseys are the biological grandparents of B.J. She has never suggested that someone other than the Poseys' son, Robert, is the father of B.J. and positively testified, although reluctantly, that Robert is the father of B.J. Her argument has consistently been that Robert's failure to take the steps necessary to have his relationship legally established prevents the Poseys from seeking to exercise their visitation rights. In addition to Toni's admission of paternity, the Commissioner had considerable testimony before him to support his finding that the Poseys are B.J.'s grandparents including the following: (1) The child was conceived and born during the time Toni and Robert cohabited; (2) The child was named after Robert; (3) Robert is listed as the father on the child's birth certificate; (4) The Poseys were invited to travel to Louisiana for B.J.'s birth; and (5) The Poseys had been allowed to care for B.J. since his birth and relate to him as though they were his grandparents.

allegations which, if proven, would support a finding that she is "unfit," *see Davis v. Collinsworth,* Ky., 771 S.W.2d 329 (1989), and/or that she has waived her superior right to custody. *See Greathouse v. Shreve,* Ky., 891 S.W.2d 387 (1995), and *Shifflet v. Shifflet,* Ky., 891 S.W.2d 392 (1995).[7] Finally, the lack of a "legal relationship" does not deprive a relative from seeking permanent custody where, as here, the party seeking custody has *de facto* custody. *See Williams v. Phelps,* Ky.App., 961 S.W.2d 40 (1998).

Accordingly, the judgment of the McCracken Circuit Court is reversed and this matter is remanded for further proceedings on the motion for visitation and the petition for custody.

All concur.

---

**7.** The petition reads in pertinent part as follows: The Petitioners have had the child's exclusive custody between July, 1992, and the present date [January 8, 1996]. The Respondent, Aline Antonette Poret, has failed to provide support for the child and has relied entirely on the Petitioners to provide for the child's day to day care, protection, and medical care and treatment. The child has serious respiratory problems which has [sic] been diagnosed as asthmatic bronchitis for which the Petitioners have obtained treatment and continue to provide for his treatment on a daily basis.